**In the Matter of WPAS, INC., Debtor.**

**Bankruptcy No. 80–933 C.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Sept. 4, 1980.

Preston O. Cockey, Jr., Tampa, Fla., for Charles Wister.

Guillermo A. Ruiz, St. Petersburg, Fla., for WPAS.

## ORDER ON AMENDED MOTION FOR ADEQUATE PROTECTION

ALEXANDER L. PASKAY, Chief Judge.

This is a business reorganization case and the matter under consideration is an Amended Motion for Adequate Protection filed by Charles F. Wister (Wister).

The original Motion for Adequate Protection filed pursuant to § 363(e) of the Bankruptcy Code merely sought an order preserving a then pending State Court Receivership and an order directing the State Court Receiver to continue in possession and continue to operate a duly licensed radio station, the sole asset of WPAS, the Debtor involved in this reorganization proceeding. On the same date that Wister filed his motion, WPAS filed an Application for an Order to Compel Custodian to Turn Over Property of the Estate. The Application, filed pursuant to § 543(b) of the Bankruptcy Code, and the Motion filed by Wister were heard in due course and on July 17, 1980, this Court entered an order and denied the Application for a Turn Over order.

The Amended Motion for Adequate Protection was also filed by Wister, who now seeks as adequate protection either in the form of a dismissal of the proceedings pursuant to § 1112 of the Bankruptcy Code or in the alternative, through abstention in order to allow Wister to proceed with the now pending foreclosure action in a State Court. This is, of course, nothing different from a prayer for relief in a complaint which seeks a vacation or modification of the automatic stay of § 362 of the Bankruptcy Code, which is, by virtue of Bankruptcy Rule 701, an adversary proceeding. It appears, however, that the Debtor did not challenge the procedural defects of the Amended Motion for Adequate Protection either for the non–compliance with the Bankruptcy Rules, or on the ground that the abstention provision of the Bankruptcy Code, § 305, is neither a substitute for a procedure to lift the automatic stay, nor is it appropriate in such situations.

With these preliminary remarks in mind, one must consider the evidence presented by Wister in support of its Amended Motion for Adequate Protection.

WPAS, Inc. is the owner and licensee of an AM and FM radio station located in Zephyrhills, Florida. Prior to August of 1979, the station was owned by Wister who, in late August, sold the station to Mayo Communications, Inc. (Mayo), who is the parent company of WPAS, which in turn is a wholly owned subsidiary of Mayo. The sale was a sale on terms with a $65,000 down payment and the unpaid balance represented by two promissory notes, one in the principal amount of $162,000 and the other in the principal amount of $50,000. Both notes bear a 9% annual interest rate payable by monthly installments of $1,215 and $506.15 respectively. While none of these notes were signed by WPAS, WPAS, pursuant to a corporate resolution (Wister Exh. # 4), pledged as security for the unpaid balance of the purchase price all of its assets in addition to the corporate stock of

WPAS that was owned by Mayo. There is no dispute that Wister duly perfected his mortgage and the security interest granted by WPAS (Wister Exh. # 1 and # 2). WPAS has not made any payments on the principal of the two notes although it kept up the interest payment until February of 1980. Thus, both notes have now been delinquent for 5 months. The balance due on the first note is $169,290 and $51,554.39 on the second note. In addition to the foregoing, Wister agreed not to compete with WPAS or Mayo in consideration of a $25,000 payment to him. The remaining unpaid balance on this obligation is the sum of $22,916.77 or a combined obligation due to Wister in the amount of $243,761.09. Prior to this Chapter 11, Wister filed his complaint of foreclosure in the State Court and applied for and obtained the appointment of a receiver, who is currently in possession and control of the station and who by virtue of the transfer of the broadcasting license by the FCC, operates the station.

On June 1, 1980, WPAS and Mayo filed their respective petition for an Order for Relief under Chapter 11 of the Bankruptcy Code ostensibly seeking to effectuate a business reorganization under this Chapter, which in turn stopped the State Court foreclosure action.

The record further reveals that the station is currently operating with a serious shortfall in the cash flow. It has, as of this date, $370.62 in the bank. Its accounts receivables stand as follows:

Generated in July, i. e. current accounts—$6,436.28 out of which $4,000 appear to be collectable in August. Accounts generated in June—$2,698.21 out of which $1,000 appear to be collectable; accounts generated in May—$542.21; in April—$384; and in March—$3,142.80. The last three are considered to be old accounts and very few of them collectable. The total anticipated collection in August appears to be $5,100 against total operating expenses of $10,221 or a cash flow shortfall of approximately $5,000 for the month of August. While this seemingly large operating deficit is due to the fact that in August, WPAS has to meet three payrolls rather than the usual two, the entire history since the takeover by Mayo and WPAS indicates a very serious cash position and although the receiver was operating for a while on a positive cash flow basis, there is hardly any doubt that the station is in a very precarious financial position. It should be pointed out in this connection that the operating overhead indicated earlier does not take into account debt service which would require an additional $1,215 per month on the $162,000 note, and $506.15 on the $50,000 note, or a total of $1,721 per month. Of course in addition, WPAS is obligated to pay Wister on the non–compete agreement.

To establish the current value of the station, an expert called by Wister stated that the station's current value as a going concern is $175,000, if sold for cash, or $225,000 if sold on long–term credit. This is the only testimony in this record as to the station's value. It should be noted that the broadcasting license is non–transferable without the consent of the FCC and such a license is granted only for three years and any prospective purchaser must be found to be a qualified operator of a radio station by the FCC. Thus, it appears that as of this date, even taking the higher figure, the equity position of WPAS is in the negative by approximately $25,000. That position, of course, will steadily increase unless WPAS is able to resume the debt service on the obligation of Mayo to Wister, which is an extremely unlikely event in light of the fact that Mayo has no income of its own except such as it receives from WPAS for management services, and it is clear that WPAS is not able to pay the management fees to Mayo.

This bleak picture presents the basis on which this Court must consider the merits of the relief sought by Wister, namely to dismiss this case under § 1112 of the Code, or in the alternative, find that Wister is entitled to adequate protection and devise a method to furnish the same.

The first proposition urged by Wister is a dismissal of the entire proceeding pursuant to § 1112 of the Bankruptcy Code; the

second proposition is abstention by this Court pursuant to § 305 of the Bankruptcy Code. Considering the second proposition, one must consider the language of that Section and if necessary its legislative history, if the language of the Section is unclear.

Sec. 305 of the Bankruptcy Code, 11 U.S.C. § 305 provides in pertinent part as follows:

> (a) "The Court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if (1) the interests of creditors and the debtor would be better served by such dismissal or suspension, (2)(A) there is pending a foreign proceeding; and (B) the factors specified in § 304(c) of this title warrant such dismissal or suspension."

■ The adoption of the doctrine of abstention by § 305 of the Bankruptcy Code is nothing more than a recognition of the well–recognized fact that there are instances where it appears to be proper for the Court to decline jurisdiction. However, it is clear that abstention is improper unless the interest of the debtor and all creditors would be better served by dismissal or suspension on all proceedings. There is no question that this Section was not designed to serve the interest of a particular creditor or the interest of the debtor only. While the application of this Section is not limited to instances where the debtor and the creditors are involved in a foreign proceeding, § 305(a)(2)(A), (B), it is clear it is only proper if the debtor and the creditors are able to work out a less expensive out–of–court arrangement which better serves *all* interests in the case. *H.R.95–595, 95th Cong. 1st Sess.* (1977); *S.Rep.95–989, 95th Cong. 2d Sess.* (1978), U.S.Code Cong. & Admin.News, 1978, p. 5787.

■ From the foregoing, it is apparent that the relief sought by Wister, based on § 305 of the Bankruptcy Code, is without merit for the following reasons: First, it is obvious that an abstention in this instance would not be in the interest of *both creditors* and the debtor. While it may be in the best interest of Wister to have this case dismissed, it needs no extensive discussion to demonstrate that a dismissal would not be in the interest of the Debtor or in the interest of the creditors of the Debtor, other than Wister. This leaves for consideration the alternative theory for relief advanced by Wister which is based on § 1112 of the Code which deals with the conversion or dismissal of a reorganization case filed under Chapter 11 of the Bankruptcy Code. § 1112 of the Bankruptcy Code provides in pertinent part as follows:

> § 1112. *Conversion or Dismissal*
>
> (b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

Subsection (c) is obviously not applicable and this leaves for consideration whether or not it is proper to dismiss this reorganization case under the clause quoted above. § 1112(b)(1); 11 U.S.C. § 1112(b)(1).

To obtain a dismissal under this Section, a party of interest must establish one of the operating elements of this Section, in this instance, § 1112(b)(1); 11 U.S.C. § 1112(b)(1).

■ Viewing the matter under consideration in light of the record established in this case, it is clear that a dismissal of this case, under § 1112(b)(1), is proper for the following reasons: The Debtor has no demonstrable equity in its assets; the Debtor is continually suffering a loss and diminution of its assets; in light of the imminent prospect of facing the prospect of loss of its entire assets in the foreclosure procedure which may, and most likely will resume, its chances to obtain rehabilitation under this Chapter are minimal, if not nil.

Considering the foregoing, this Court is satisfied that in the absence of any counter-

vailing persuasive considerations, none of which are present in this record, it is proper to consider the dismissal or in the alternative, the entry of an order of relief directing the liquidation of Chapter 7 of the Code, if it appears to be appropriate, after notice to all creditors.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Amended Motion for Adequate Protection be, and the same hereby is, denied without prejudice pending the resolution of the fate of the business reorganization case to be considered after notice and hearing. It is further

ORDERED, ADJUDGED AND DE-CREED that the Clerk of this Court shall reschedule, forthwith, a hearing pursuant to § 1112(b)(2) for the purpose of considering either dismissal or an entry of an order for relief under Chapter 7 of the Bankruptcy Code.