**In re B.D. INTERNATIONAL DISCOUNT CORP., Debtor.**

**Bankruptcy No. 81 B 11019.**

United States Bankruptcy Court, S. D. New York.

Aug. 12, 1981.

---

Orenstein, Snitow, Sutak & Pollack, P.C., New York City, for B.D. International Discount Corp.

Milbank, Tweed, Hadley & McCloy, New York City, for respondent petitioning creditor.

## DECISION ON MOTION TO DISMISS INVOLUNTARY CHAPTER 7 PROCEEDING

BURTON R. LIFLAND, Bankruptcy Judge.

In this case the moving papers and the initial response framed the issue before the court: whether to dismiss an involuntary Chapter 7 petition against a dealer in money market instruments filed by its primary banker and alleged sole creditor. Accordingly, this decision will begin by addressing the initial arguments.

The proposed debtor, B.D. International Discount Corporation ("BDI"), is a New York corporation that dealt in banker's acceptance and other money market instruments. Chase Manhattan Bank ("Chase"), the petitioning creditor, was BDI's primary banker for over ten years. During that period Chase regularly supplied BDI with statements of its bank accounts.

It appears that in October or November of 1979 Chase erroneously credited BDI's account with sums totaling $7,268,745.92. Subsequently, in November of 1980, pursuant to five money market transfer instructions, a total of $4.3 million was transferred from BDI's account at Chase to Amro Bank, Amsterdam for the account of Segrex, S.A., a Swiss corporation whose relationship to BDI was finally revealed during the last day of the hearings on the motion: it is the sole shareholder of BDI. In the interim period BDI has ceased operating and its tangible assets of $240,000.00 in cash are in an attorney's escrow account. A new entity, B.D. Discount of America, was created on November 28, 1980 and engages in the same type of business as BDI.

Chase asserts that certainly by the spring of 1980 some of BDI's employees and managers were aware of the mistaken transfer and that, thereafter, they engaged in transactions that stripped BDI of its assets. Chase further alleges that BDI admitted its liability for the debt in compromise negotiations had between the parties prior to any litigation involving Chase.

BDI, on the other hand, claims Chase notified it of certain unreconciled balances in November of 1980, and that it (BDI) does not acknowledge its liability to Chase.

On May 1, 1981 Chase commenced an action for conversion in New York State Supreme Court against (1) two employees and officers of BDI, (2) Segrex, (3) B.D. Discount of America (alleging that it was organized to take over the business of BDI) and (4) John Doe one through ten (individuals of unknown identity who Chase alleges have participated as principals and aiders and abettors in the wrongful acts of the other defendants). The proposed debtor, however, was not named as a defendant.

On May 13, 1981, Chase filed an involuntary Chapter 7 against BDI pursuant to § 303 of the Bankruptcy Code.[1] BDI then moved to dismiss the petition or alternatively to have the court abstain under § 305.[2]

Section 303 provides that in order to commence an involuntary case a petition may be filed by the holder of a claim against a person that is not contingent as to liability. BDI contends at the outset that by reason of the pending state court action, no liability had been fixed as of the filing of the petition and that Chase's claim is entirely contingent, thereby excluding Chase as a qualified petitioning creditor.

---

1. Title I of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2683, U.S.Code Cong. & Admin.News 1978, p. 5787, enacted and codified as Title 11 of the United States Code, the "Bankruptcy Code", and all section references cited herein may be found in Title 11, unless otherwise indicated.

2. § 305. Abstention.
   (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if
   (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

   .  .  .  .  .

   (c) An order under subsection (a) of this section ... is not reviewable by appeal or otherwise.

■ However, merely setting up a dispute to a claim does not disable one as a creditor under § 303. Moreover, the fact that Chase's state court complaint sounded in tort is not dispositive of the issue of contingent liability. As is pointed out by Chase, while its claim against BDI may have some attributes grounded in tort, the debt if need be characterized at all, is basically for money had and received or resulting from a bailment. As stated by Judge Babitt in *In re Friedenberg (Citibank v. Friedenberg)*, 12 B.R. 901, 904, (Bkrtcy.S.D. N.Y.1981). "This court will not exalt form over substance to the end that it binds itself by the choice of language in another forum. (citation omitted) . . . [T]his court can look behind the gravamen pleaded to determine the nature of this disputed debt. . . ."

Section 101(11) defines "debt" as "liability on a claim", and Section 101(4)(A) defines "claim" as a "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, *disputed*, legal, secured or unsecured." Only the holder of a contingent claim is barred from filing an involuntary petition. [§ 303(b)(1)]. A claim which is contingent as to liability has been defined as, "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *In re All Media Properties*, 5 B.R. 126, 6 B.C.D. 586, 587 (Bkrtcy. S.D.Tex.1980).

■ Since there is no extrinsic event contemplated by the debtor and creditor at the time the erroneous transfer occurred that will trigger liability; it is clear that BDI's liability to Chase, while disputed, is not contingent. *See In re Covey*, 650 F.2d 877, 7 B.C.D. 1069 (7th Cir. 1981).

The next question posed by the debtor is whether the court can and should issue an order for relief where there may be only one creditor. Section 303(b) provides that where there are fewer than 12 creditors, any one creditor (non-contingent) with an unsecured claim of at least $5,000.00 is necessary to file an involuntary petition. But the debtor questions the standing of a single and *only* creditor to file an involuntary petition.

At least one Bankruptcy Court has held that while the isolated failure to meet a liability to a single creditor will not serve as the basis for an involuntary petition, "no case should be dismissed out of hand upon the bare proposition that there is only one creditor and, hence, for that reason alone no case could ever be made." *In re 7H Land and Cattle Co.*, 6 B.R. 29, 2 C.B.C.2d 121, 6 B.C.D. 128, 6 B.R. 632 (Bkrtcy.E.D.N.Y. 1980). The standard articulated in *7H* and in *In re Arker*, 6 B.R. 632, 3 C.B.C.2d 121, 6 B.C.D. 128, 6 B.R. 632 (Bkrtcy.E.D.N.Y. 1980) is that an order for relief can be granted in a single creditor case if (1) the sole creditor would be without an adequate remedy in non-bankruptcy law or (2) there is a showing of special circumstances amounting to fraud, trick, artifice or scam.

In the instant case Chase maintains that fraud on the part of insiders of BDI establishes such "special circumstances". Chase claims that BDI's principal officers knew in the spring of 1980 that BDI held $7.2 million of Chase's money, that they embarked on a scheme to strip BDI of its assets, and that they transferred funds out of BDI to third parties, including $4.3 million to Segrex, its sole stockholder. Chase further asserts that this "looting" of the corporation left a non-working shell and that another company emerged in its place (B.D. Discount of America) to "carry on B.D. International's business without the bother of its obligations to creditors." [3]

■ It is urged upon the court by BDI that under a single substantial creditor concept this debtor is paying its debts as they become due, which is the antithesis to the standard set forth in § 303(h) for the granting of an order for relief. Even if we were

---

3. Supplemental memorandum of the Chase Manhattan Bank at 1.

to give credence to BDI's assertion that debt, if it exists at all, is due to only one creditor, the special circumstances displayed in the record in this proceeding renders this case ripe for the appointment of a trustee to investigate the affairs of BDI. Therefore this case would be deserving of bankruptcy court administration even if Chase were the *only* creditor. However, as detailed below, it has been determined that on the petition filing date there were at least ten creditors with aggregate debts due of upwards of $120,000 exclusive of the Chase debt.

At the last adjourned hearing the following facts came to light which make it even more appropriate for this court to assume jurisdiction.

(1) BDI filed its list of creditors pursuant to an order of the court (see also Bankruptcy Rule 104(e)) and revealed that it has three unidentified creditors and five identified creditors, four of whom were contingent and one of whom, Citibank, appeared and represented to the court that it was owed at least $2,300.00.

(2) BDI conceded in open court that Wilkie, Farr & Gallagher, a law firm, was a creditor in the amount of $75,000.00 at the time BDI filed its motion to dismiss the petition, but that they are no longer a creditor, having been paid outside the Bankruptcy Court pending the final hearing on the dismissal motion.

(3) The City of New York has filed a claim for unpaid taxes of $43,320 for the period, 6/1/77–5/13/81.

(4) BDI revealed, upon questioning by the court, that Segrex was its sole stockholder.

(5) BDI admitted it received a sum of $710,000.00 in April of 1981 which was not held in escrow, but was transferred to the account of Segrex as a loan.

Therefore, it is apparent that the requirements of § 303(b) have been met. Chase is *not* a sole creditor. There are fewer than 12 creditors and one of them holding an unsecured non-contingent claim of at least $5,000.00 has filed the involuntary petition.

Apparently recognizing the dubious application of § 303, BDI pitched its alternative dismissal grounds to § 305 asking the court to abstain in the best interests of the creditors and the debtor.

The legislative history of § 305 indicates that it was intended to give the bankruptcy court flexibility where the debtor and creditors are attempting an out-of-court creditor arrangement.

The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests of the case. . . .

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 325; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 35, U.S.Code Cong. & Admin.News 1978, pp. 5823, 6281.

In the few cases arising under § 305 courts have acknowledged that abstention is appropriate where federal proceedings are not necessary to reach a just and equitable solution. *See In re Nina Merchandise Corp.*, 5 B.R. 743, 2 C.B.C.2d 1098, 1104, 6 B.C.D. 910, 913, 5 B.R. 743, 748 (Bkrtcy.S.D. N.Y.1980, Lifland, B. J.) It is clear that such a situation is not present here.

■ The facts adduced at the hearings demonstrate that the best interests of the petitioning creditor and the other creditors would *not* be served by abstention. The payment to Wilkie, Farr & Gallagher that occurred during the pendency of these proceedings presents the issue of a voidable post-petition transfer (§ 549). The "loan" of $710,000 to Segrex is also questionable. In addition, both the disappearance of the $7.2 million (part of which may have indirectly reappeared in Segrex's account) and the demise of BDI followed by the accession of B.D. of America raises the spectre of fraudulent activities mandating Bankruptcy

investigation and administration. Furthermore, the very circumstance under which Chase, a 7 million dollar creditor, finds itself without other creditor companionship [in an asset drained estate] in and of itself suggests the need for Bankruptcy judicial oversight. Under the jurisdiction of this court a trustee can be appointed to conduct a thorough investigation into BDI's financial affairs, § 704(3), and to collect and reduce to money the property of the estate, § 703(1). The trustee, with his comprehensive discovery powers, (Bankruptcy Rule 205) and his broad avoiding powers (§§ 547, 548, 549) will provide a remedy for the creditors that is not available in a non-bankruptcy proceeding.

The facts of this case buttress the need for such a trustee so that dismissal or suspension would be an abdication of the Court's responsibility. *See Nina*, 2 C.B.C.2d at 1105, 6 B.C.D. at 913, 5 B.R. at 748.

Therefore, based on the foregoing analysis, the motion to dismiss or abstain is denied.

The threshhold § 303 issue of petitioning creditor eligibility and the abstention request pursuant to § 305 having been determined, BDI (if so inclined) may file an answer to the involuntary petition within five days. Such answer shall not raise any of the issues decided herein and shall be limited to the statutory grounds set forth in § 303(h)(1)(2).

So ordered.