### In re NEW MEXICO PROPERTIES, INC., Debtor.

**Bankruptcy No. 81–00957 M A.**

United States Bankruptcy Court, D. New Mexico.

March 29, 1982.

---

Jennie Deden Behles, Albuquerque, N. M., W. T. Martin, Jr., Carlsbad, N. M., for alleged debtor.

Randal W. Roberts, Ross B. Perkal, Douglas T. Francis, Albuquerque, N. M., for petitioning creditors.

Paul M. Fish, Albuquerque, N. M., for Southwestern Life Ins. Co.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came on for hearing December 10, 1981, on the petitioning creditors' request for an order for relief against the alleged debtor, New Mexico Properties, Inc. (NMPI), the petitioning creditors being present through their counsel, Douglas T. Francis, Randal W. Roberts and Ross B. Perkal, NMPI being present through its president, Odell Spurlin, and its counsel, Jennie Deden Behles. At the commencement of said hearing, the parties requested permission from this Court to present their cases on briefs and exhibits, obviating the need for a hearing. This Court agreed and both parties filed briefs with the Court on December 22, 1981, along with proposed findings of fact and conclusions of law.

Before discussing the legal aspects of this case, a brief outline of the facts surrounding this controversy appears in order.

NMPI is a corporation licensed to do business in the State of New Mexico. Its primary activity, and the activity causing this controversy to come about, is buying, selling, and leasing properties and buildings which are involved in shopping center development within and without New Mexico. Between 1974 and 1976, NMPI entered into various business transactions with each of the petitioning creditors except Shop Rite Foods, Inc. In an oversimplified fashion, the form of each transaction involved a sale of either property or leasehold interest by NMPI to one of the limited partnerships which, in exchange for the property, executed a promissory note and mortgage in favor of NMPI. Typically, NMPI would then lease the property back from the purchaser as a lessee in a triple-net lease. The triple-net lease allegedly made NMPI responsible for all upkeep costs including property taxes, insurance, and repairs. With each limited partnership, an escrow arrangement was entered into through which funds to both the limited partnership (rent) and NMPI (debt service) were funnelled. Confusion arose as to exactly how the escrow agent was to disburse funds, thereby causing overpayment to certain parties and leading eventually to 14 lawsuits being filed against NMPI. These lawsuits were filed in New Mexico District Court in Eddy County and were assigned to Judge C. Fincher Neal. Judge Neal held consolidated hearings on these lawsuits in November, 1980; February, 1981; and July, 1981. The upshot of the hearings was that the parties entered into a stipulation disposing of their claims. The stipulation was signed and Judge Neal was to approve it on

September 8, 1981. However, the involuntary petition was filed September 4, 1981, preventing further activity in relation to the stipulation. It should be noted that each limited partnership had the same general partner, Occidental Land and Research.

Shop Rite Foods, Inc., was not involved in any of the above-mentioned transactions. Rather, its claim arises from litigation against NMPI in Eddy County District Court. At issue was a mispayment of rent to NMPI instead of the proper lessor, NMPI failed to repay this amount. Findings of fact and conclusions of law were entered by the Eddy County District Court on July 17, 1981, but prior to an entry of judgment, this involuntary petition was filed. As a result of the automatic stay, no judgment was entered in that matter either.

NMPI argues that although the limited partnerships may have valid claims for amounts due, the limited partnerships, on balance, owe NMPI the outstanding balance on each of the underlying promissory notes. This argument is based on the fact that the stipulation entered into by all parties required each to provide the other with an accounting of the sums alleged due. The accountings allegedly show the limited partnerships owing NMPI. NMPI argues that Shop Rite fails to qualify as a creditor under the Bankruptcy Code because it has no judgment against NMPI nor has Shop Rite attempted to collect payment of the mispayment of rent. Further, NMPI contests the allegation that it is not generally paying its debts as they become due because neither the limited partnerships nor Shop Rite Foods, Inc., is owed any money and because their other creditors' accounts are being kept current.

The limited partnerships, of course, believe they are owed certain funds not paid under the triple-net lease arrangements by NMPI. Shop Rite Foods, Inc., argues that its claim qualifies as a valid claim under the Bankruptcy Code since it is uncontingent as to liability. The petitioning creditors list for the court several alleged indicia of insolvency evidencing its inability to generally pay debts as they become due.

11 U.S.C. Section 303 (1978) governs the handling of an involuntary petition in bankruptcy. The two most relevant subsections with which this court will be concerned are the following:

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000.00 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000.00 of such claims;

and,

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due; or

(2) within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

11 U.S.C. Section 303 (1978).

The first hurdle for petitioning creditors to overcome is jurisdictional. 11 U.S.C. Section 303(b) (1978) sets out the initial

inquiry for this Court to make before it can proceed to determine whether the alleged debtor shall be forced into bankruptcy. There must be a sufficient number of qualified claimants petitioning the Court for an order for relief. Once it is shown that there are a sufficient number of petitioning creditors who have valid claims, this Court has jurisdiction to proceed to the question of whether the alleged debtor is generally not paying its debts as they become due, such a finding entitling the petitioning creditors to an order for relief.

In the alternative, the Court may, pursuant to 11 U.S.C. Section 305, abstain from hearing a case.

The Court must first determine whether the petitioning creditors who have filed the involuntary petition herein are eligible to so file under 11 U.S.C. Section 303(b).

In its answer filed September 24, 1981, the alleged debtor, NMPI, asserts as an affirmative defense that pursuant to a transcript of record from the District Court of Eddy County, New Mexico, 14 of the 17 petitioning creditors do not qualify as creditors who are eligible to file an involuntary petition under 11 U.S.C. Section 303(b).

The judgment which NMPI refers to is evidenced by defendant's exhibit AAAAAAAA, entitled "Stipulation for Settlement," which is a transcript of proceedings held on February 3, 1981, in Eddy County District Court. The underlying dispute and parties therein center on the same dispute presented to this Court by the same parties, relating to funds allegedly due and owing 14 of the 17 petitioning creditors herein. The 14 petitioning creditors, plaintiffs in state district court, are: Silver City Anthony, Ltd.; Guymon Properties, Ltd.; Denver City Variety, Ltd.; Silver City Shop Rite; Carlsbad R. D., Ltd.; Hobbs R. D., Ltd.; Monahans Variety, Ltd.; Pecos Foodway, Ltd.; Pecos R. D., Ltd.; Pecos Variety, Ltd.; Silver City Variety, Ltd.; Taos T. G. & Y., Ltd.; Taos Shop Rite, Ltd.; and Brownfield Variety, Ltd. Randal W. Roberts represented these creditors and NMPI was present through its officer, Odell Spurlin, and its counsel, W. T. Martin, Jr.

Judge Neal held a hearing on February 3, 1981, at which time the stipulation agreed to by all petitioning creditors was read into the record and was to have been reduced to writing shortly thereafter. The parties, having settled all but the exact dollar figures involved, promised Judge Neal that by summer 1981, a final accounting conforming with the stipulation of February 3, 1981, would be submitted for his approval. On July 23, 1981, the parties again appeared before Judge Neal requesting guidance in reaching final dollar figures. Judge Neal continued the hearing until September 8, 1981, at which time he would expect to receive final accountings between the parties, enabling the matter to come to an end. On September 4, 1981, the last business day before the final hearing, the involuntary petition was filed in this Court seeking relief under 11 U.S.C. Section 303. Because of the effect of the automatic stay (11 U.S.C. Section 362), the September 8 hearing was never held and final relief from state district court was never rendered.

The stipulation read into the record and agreed to by the parties in pertinent part provided:

1) That any notices of acceleration on promissory notes owed to NMPI would be either cancelled or rescinded, thereby reinstating all of the underlying notes owed to the plaintiff therein as of February 3, 1981;

2) That the parties would produce an accounting setting forth all sums due and in the event that each of the parties' accountings differed, the state district court would make a final determination;

3) That all leaseback agreements between plaintiffs and NMPI would be mutually rescinded as of February 3, 1981;

4) That credit given to the plaintiffs by NMPI for any funds expended by them for taxes, insurance, maintenance or repairs, and that such credit either be in the form of cash repayment or reduction in the outstanding balance due NMPI on its all-inclusive

notes to plaintiffs and in the event that a credit amounts to more than the equity of NMPI in the all-inclusive note, then whatever amount exceed the equity in the all-inclusive note will be allocated against equities in other all-inclusive notes as directed by the plaintiff and that any pending escrow instructions will be modified by the parties to take into account the crediting arrangement;

5) That in regard to handling the percentage or overage rents, if there is no assignment of the overage rents in regard to the particular partnership to a lending institution, the partnership will receive the overage rents in cash, not as a credit against the all-inclusive note; if there is a prior assignment by a partnership of the overage rent to a lending institution, until the balance is paid off and the partnership will have credit on their all-inclusive note for the amount of the overage rent since prior assignment is effective.

The credit arrangement as to each plaintiff is described in more detail in defendant's exhibit AAAAAAAA. Upon finishing their recital of the stipulation, Judge Neal stated:

> The Court will announce, and it will be the order of this Court, that this stipulation that has been announced in open court, in session, will be typed by the reporter. It will be approved by the Court and filed in each of the cases herein, and it is the duty and obligation of the parties to this lawsuit to enter joint judgment forthwith pursuant to said stipulation, and it is so ordered by this Court.

Defendant's exhibit AAAAAAAA, p. 21, lines 17–24.

There were no objections noted in the record. On the contrary, counsel for both parties fully consented to the stipulation for settlement, as did Mr. Spurlin. It appears from the record that this stipulation settled all controversies between NMPI and the plaintiffs, except exact amounts to be credited, obviating the necessity of a trial as to each plaintiff. The stipulation was never, however, entered as a judgment of record.

The question, then, before the Court with regard to the stipulation for settlement noted above is what effect the stipulation has in relation to the involuntary petition in bankruptcy filed by the petitioning creditors and, in particular, do the parties in the Eddy County lawsuit have claims which make them eligible to qualify as petitioning creditors under 11 U.S.C. Section 303(b) (1978).

The petitioning creditors argue that this settlement agreement is a contract between the parties, the effect of which will be that of a judgment only if approved by a court order. Since there was no court order entered, the settlement cannot be effective as a judgment.

NMPI, on the other hand, asserts that the stipulation for settlement is a contract binding on all parties entering into it and consequently, no dispute is before this Court because the parties have settled their differences.

■ Both NMPI and the petitioning creditors properly cite to the Court the controlling law in New Mexico regarding the effect of a stipulated judgment. A stipulated judgment is not a judicial determination, but is a contract between the parties entering into said stipulation. *Owen v. Burn Construction Company*, 90 N.M. 297, 563 P.2d 91 (1977), citing *State, ex rel., State Highway Commission, v. Clark*, 79 N.M. 29, 439 P.2d 547 (1968). Not only is this controlling law in New Mexico, but also is controlling throughout the United States. Mr. Justice Brennan in *United States v. ITT Continental Baking Company*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975), wrote that consent decrees are to be construed for enforcement purposes basically as contracts and in construing them reliance should be placed on rules of construction applicable to any other contract. *Id.*, at 238, 95 S.Ct. at 935. *See United States v. Northern Colorado Water Conservancy District*, 608 F.2d 422 (10th Cir. 1979); *Nieminen v. Pitzer*, 281 Or. 53, 573 P.2d 1227 (1978); *Threet v. Texas Employers' Insur-*

ance Association, 516 S.W.2d 276 (Tex.Civ. App.1974); Wright v. Allstate Insurance Company, 285 S.W.2d 376 (Tex.Civ.App. 1955); Washington Asphalt Company v. Harold Kaeser Company, 51 Wash. 89, 316 P.2d 126 (1957).

■ A stipulation is binding on the parties entering into it, absent special circumstances. Northern Colorado Conservancy District, supra, Vallejos v. C. E. Glass Company, 583 F.2d 507 (10th Cir. 1978); In re Hickok's Will (Toledo Society for Crippled Children v. Toledo Trust Co.), 61 N.M. 204, 297 P.2d 866 (1956). See Hardy v. Bankers Life & Casualty Company, 232 F.2d 205, cert. denied, 351 U.S. 984, 76 S.Ct. 1051, 100 L.Ed. 1498 (7th Cir. 1956); In re Key Truck Leasing, Inc. (Transport Acceptance Corp. v. Fothergill), 9 B.R. 837 (Bkrtcy.D.Kansas 1981); Klinker v. Klinker, 132 Cal.App.2d 687, 283 P.2d 83 (1955); Fitzgerald v. Juhlin, 194 Or. 40, 240 P.2d 1191 (1952); Wright, supra; Grossman v. Will, 10 Wash. App. 141, 516 P.2d 1063 (1973).

■ Based upon the clear weight of authority cited above, this Court finds that the stipulation for settlement entered into on February 3, 1981, before Judge Neal is binding upon all parties who entered into it, even in the absence of an entry of judgment on such stipulation. The question of a lack of an entered order raised by the petitioning creditors need not be dealt with here since it has been determined that the parties have entered into a binding contract.

Having found that the parties entering into the stipulation are bound thereby, the Court now turns to the question of how these creditors fare under 11 U.S.C. Section 303(b) (1978), i.e., are these creditors eligible to file an involuntary petition against NMPI.

A "creditor" is an entity having a claim against the debtor that arose at the time of or before the order for relief concerning the debtor was entered. 11 U.S.C. Section 101(9). An "entity" includes a person, estate, trust, or governmental unit. 11 U.S.C. Section 101(14). A "person" includes indi-

viduals, partnerships, and corporations. 11 U.S.C. Section 101(30). A "claim" is a right to payment whether it be liquidated or not, disputed or undisputed. 11 U.S.C. Section 101(4).

■ The petitioning creditors involved in the stipulation qualify as persons since they are partnerships and they qualify as entities since they are persons under the Code.

■ The problem, then, lies in whether or not they have a "claim." Because the petitioning creditors stipulated to the fact that there are balances due on promissory notes and mortgages in favor of NMPI and that they are bound to pay these balances off through credits arranged via the stipulation for settlement, the petitioning creditors cannot be found to have a claim, as claim is defined under the Code. The limited partnerships admitted that they are not owed money by NMPI. Therefore, this Court finds that these petitioning creditors are not eligible to file an involuntary petition in bankruptcy because they are not "creditors" under the Code since they do not have any right to payment, or "claim."

Having found that 14 of the 17 petitioning creditors fail to meet the jurisdictional requirements of Section 303(b)(1) regarding cases wherein there are 12 or more creditors, only three parties remain who may or may not meet the jurisdictional requirements of 11 U.S.C. Section 303(b) (1978): Shop Rite Foods, Inc.; Lovington Thrifty, Ltd.; and Lovington Variety, Ltd.

Shop Rite Foods, Inc.

Shop Rite Foods, Inc. (Shop Rite), claims that it has a claim against NMPI based upon findings of fact and conclusions of law entered July 13, 1981, in Eddy County (New Mexico) District Court under a cause styled Shop Rite Foods, Inc. v. New Mexico Properties, Inc., and Las Vegas Properties, Ltd., No. CV–79–357 (plaintiff's exhibit 7). The cause of action arose from an apparent mispayment of percentage rent arising out of a lease originally entered into between Shop Rite and NMPI. This lease was terminated, causing payments to be made to Las Vegas Properties, Ltd., instead of NMPI.

On or about January 20, 1979, Shop Rite mistakenly paid the sum of $20,294.30 to NMPI rather than to Las Vegas Properties, Ltd. NMPI allegedly failed to repay said sum, leading to the Eddy County litigation. District Judge Neal concluded and NMPI stipulated that Shop Rite mistakenly paid NMPI said sum. He further concluded that NMPI was not entitled to such a payment and that Shop Rite was entitled to restitution of said funds paid to NMPI. (Plaintiff's exhibit 7 at p. 4).

Although the Eddy County District Court entered findings of fact and conclusions of law July 13, 1981, judgment in said action was not entered as of September 4, 1981, the date that the involuntary petition against NMPI was filed. Therefore, on the date of filing, Shop Rite's claim was based on findings of fact and conclusions of law, not on a final judgment. Because the automatic stay became effective on the filing date, Shop Rite was barred from proceeding to enter final judgment in the state court proceeding.

NMPI challenges the validity of Shop Rite's claim on the ground that findings of fact and conclusions of law alone do not entitle Shop Rite to qualify as a creditor pursuant to 11 U.S.C. Section 303(b)(1) since such a claim is "not contingent as to liability." Therefore, in order for Shop Rite to qualify as a petitioning creditor, its claim must be noncontingent as to liability.

As noted above, "claim" is defined to include any right to payment WHETHER OR NOT SUCH A RIGHT IS REDUCED TO JUDGMENT, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured. 11 U.S.C. Section 101(4)(A) (1978). (Emphasis added). Since "claim" is specifically limited in 11 U.S.C. Section 303(b), it must be concluded that "claims" of petitioning creditors in involuntary bankruptcy petitions must be limited to those which are not contingent as to liability notwithstanding the fact that "claims" elsewhere in the Code are defined as including contingencies. *In re Covey,* 4 C.B.C.2d 719, 7 B.C.D. 1069, 650 F.2d 877, (7th Cir. 1981); *In re North*

*Country Chrysler Plymouth,* 4 C.B.C.2d 1533, 13 B.R. 393 (Bkrtcy.W.D.Mo.1981); *In re Kreidler Import Corp.,* 2 C.B.C.2d 159, 6 B.C.D. 608, 4 B.R. 256 (Bkrtcy.D.Md.1980). It seems significant to this Court that the definition, as modified in 11 U.S.C. Section 303(b) (1978), includes claims which are not reduced to judgment.

The meaning of what types of claims are not contingent as to liability has been considered and adequately delineated by several bankruptcy courts across the country. A representative definition of the meaning of claims not being contingent as to liability appeared in *In re All Media Properties, Inc.,* and *Artlite Broadcasting Co.,* 2 C.B.C.2d 449, 6 B.C.D. 586, 5 B.R. 126 (Bkrtcy.S.D.Tex.1980), which defined the phrase as follows:

> A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time of the original relationship of the parties was created. On the other hand, if a legal obligation to pay arose at the time of the original relationship, but that obligation is subject to being avoided by some future event or occurrence, the claim is not contingent as to liability, although it may be disputed as to liability for various reasons.

*Id.* at 456, 5 B.R. 126. In other words, a claim may be not contingent as to liability although it may be disputed or unmatured. *Id. See In re Covey, supra; In re Gill Enterprises, Inc.,* 4 C.B.C.2d 1312, 15 B.R. 328 (Bkrtcy.D.N.J.1981); *In re B. D. International Discount Corp.,* 5 C.B.C.2d 220, 13 B.R. 635 (Bkrtcy.S.D.N.Y.1981); *In re McNeil,* 5 C.B.C.2d 402, 13 B.R. 434 (Bkrtcy. E.D.Tenn.1981); *In re Chong,* 2 C.B.C.2d 1037, 16 B.R. 1 (Bkrtcy.D.Hawaii 1980).

In determining whether or not the Shop Rite claim is valid under the Code, the facts in two cases present applications of the rules which are instructive to this Court. The question presented to the bank-

ruptcy court for the Eastern District of Tennessee in *McNeil, supra,* was whether the claim of creditor United States Fidelity & Guarantee Co. (USF&G) was contingent as to liability. The claim of USF&G arose from a master surety agreement it entered into with the debtor's corporation. Under the terms of the agreement, the debtor would be obliged to indemnify USF&G if the debtor's corporation defaulted on the underlying obligation which USF&G had paid. The court held that the USF&G claim was not contingent as to liability because all events giving rise to the claim against the debtor had occurred: (1) the debtor had defaulted on its obligation; (2) USF&G paid definite sums in satisfaction of that underlying obligation; and (3) under the terms of the master surety agreement, the debtor was obliged to indemnify USF&G for those amounts. The court stated that USF&G was not required to obtain a judgment against the debtor before it could achieve the status of a petitioning creditor in an involuntary bankruptcy proceeding.

*In re B. D. International Discount Corp., supra,* involved a credit by Chase Manhattan Bank of funds wrongly recorded on the debtor's account. The debtor was a dealer in money market instruments. Apparently the debtor was aware of the erroneous transfer and shortly thereafter used the funds for its benefit. It then ceased operation. The bank instituted a cause of action in state court grounded in the tort of conversion but had not yet reduced its claim to judgment at the time it filed an involuntary petition in bankruptcy against the debtor. Again, it was held that the bank's claim was not contingent as to liability even though the claim had not been reduced to judgment and even though the claim was disputed by the debtor. "Since there was no extrinsic event contemplated by the debtor and the creditor at the time the erroneous transfer occurred that would trigger liability, it is clear that the debtor's liability to the creditor while disputed, is not contingent." *Id.,* 5 C.B.C.2d at 223, 13 B.R. 635.

Indeed, the claim of Shop Rite may be disputed insofar as NMPI is concerned, nevertheless, it is a claim which is fixed as to amount and it is a claim which at the time of the mispayment by Shop Rite to NMPI left no extrinsic event, the occurrence of which was necessary to trigger liability of NMPI. At the time of the mispayment, NMPI could neither have actually or presumably contemplated any future occurrence necessary to trigger its liability. Therefore, this Court finds that the Shop Rite claim for $20,094.30 based on the Eddy County litigation is not contingent as to liability within the meaning of such phrase in 11 U.S.C. Section 303(b) (1978). The fact that no judgment was entered in said litigation does not cause this claim to be considered contingent or open-ended; the parties litigated their dispute and reached the stage of having findings of fact and conclusions of law entered in the Eddy County District Court. Although it may be that the claim is disputed, it is not contingent. *Lovington Thrifty, Ltd., and Lovington Variety, Ltd.*

The last remaining claims are those of Lovington Variety, Ltd., and Lovington Thrifty, Ltd. While the Court has not determined the exact amount owed to both parties, it appears that Lovington Thrifty, Ltd., and Lovington Variety, Ltd., do, in fact, have claims against the alleged debtor. A careful review of the stipulation for settlement entered February 3, 1981, before Judge Neal (defendant's exhibit AAAAAAAA at pp. 10–11), reveals that the parties stipulated that they had settled the Lovington Thrifty, Ltd., and Lovington Variety, Ltd., matters. Pursuant to plaintiff's exhibits 2 and 3, attached to plaintiff's exhibit 323, the transcript of proceedings before Judge Neal held on November 7, 1980, the parties settled their controversies. Plaintiff's exhibit 2 settles the controversy between Lovington Variety, Ltd., and NMPI, and plaintiff's exhibit 3 settles the controversy between Lovington Thrifty, Ltd., and NMPI. These settlement agreements do not differ substantially from the manner in which the claims of the other limited partnerships were settled.

Therefore it appears, and the Court so finds, that only one creditor, the claimant Shop Rite Foods, Inc., qualifies as a petitioning creditor under Section 303(b)(1).

 The defendant's exhibits indicate that there may be sums due additional creditors consisting mainly of attorneys' and accountants' claims against the alleged debtor. While this Court has in some instances given notice to other creditors of an alleged debtor so as to allow them to intervene (in that case, an insider of the alleged debtor was acquiring claims of the petitioning creditors so as to cause the petition to be dismissed), this case does not seem to warrant such action. *In re Bokum Resources Corporation*, Memo. Op. dated 12.-21.81, # 81–00666 K A (Bankr.D.N.M.).

This Court has carefully examined the majority of more than 500 exhibits filed in this case. It appears, absent the filing of this petition, that the accounting between the alleged debtor and 16 of the 17 petitioning creditors would have been completed and all the issues between the parties resolved within days of the date of filing this involuntary petition.

While this Court could, given the inclination, probably find two other creditors of the alleged debtor so as to be able to find in accordance with 11 U.S.C. Section 303(b)(1) (1978), it seems that this matter is one of the few which falls within the purview of 11 U.S.C. Section 305. It would appear that the interests of not only the debtor but the petitioning creditors would be much better served if this Court abstains in this matter and allows a speedy completion of the pending state court cases involving the alleged debtor and 16 of the petitioning creditors.

While this Court makes no finding that the involuntary petition was filed in an attempt to relieve the majority of the petitioning creditors from their stipulation previously agreed to by the petitioning creditors and approved by the state court, it should be extremely careful that it is not used (and thus abused) for such reasons.

... a disgruntled player should not be heard to complain at the end of the fourth quarter that the game would have been better played in another stadium.

*In re Sun World Broadcasters, Inc.*, 2 C.B. C.2d 899, 904, 6 B.C.D. 884, 886, 5 B.R. 719, 722–23 (Bkrtcy.M.D.Fla.1980). That is especially true where, as here, the petitioning creditors chose, in the first instance, the forum in which to initially bring litigation, or the stadium in which the game would be played, as it were.

It is the opinion of this Court that 11 U.S.C. Section 305 (1978) should be used only in rare instances. This is particularly true in that an order of this Court pursuant to 11 U.S.C. Section 305 is not reviewable by appeal or otherwise and should not be utilized to avoid hard issues or complex cases. This Court wishes it to be clear to the parties that if it were using abstention in such a manner, it would not have spent the time to determine that the requirements of 11 U.S.C. Section 303(b)(2) (1978) had not been met. Indeed, from the few cases reported dealing with 11 U.S.C. Section 305 (1978), it would appear that the bankruptcy courts across the nation are using the doctrine in a sparing manner and for the real purpose for which it was intended. *In re Bioline Laboratories, Inc.*, 7 B.C.D. 948, 9 B.R. 1013 (Bkrtcy.E.D.N.Y. 1981); *In re Saint Matthew Lutheran Church of Irvine, California*, 6 B.C.D. 578 (Bkrtcy.C.D.Cal.1980); *In re WPAS, Inc.*, 6 B.C.D. 1183, 6 B.R. 44 (Bankr.M.D.Fla. 1980); *In re Sun World Broadcasting, Inc., supra; In re Nina Merchandise Corp.*, 2 C.B.C.2d 1098, 6 B.C.D. 910, 5 B.R. 743 (Bkrtcy.S.D.N.Y.1980); *In re Luftek*, 2 C.B. C.2d 1351, 6 B.C.D. 1083, 6 B.R. 539 (Bkrtcy. E.D.N.Y.1980).

An appropriate order will enter.