**In the Matter of GILL ENTERPRISES, INC., t/a the Advance Company, Alleged Debtor.**

**Bankruptcy No. 81–02232.**

United States Bankruptcy Court, D. New Jersey.

July 29, 1981.

Kleinberg, Moroney, Masterson & Schachter by James E. Masterson, Millburn, N. J., for alleged debtor.

Riker, Danzig, Scherer & Hyland by Dennis J. O'Grady, Newark, N. J., for petitioning creditors Armstrong Mach. Works and Armstrong-Hunt, Inc.

Rodino, Forman & D'Uva by Raymond P. D'Uva, East Orange, N. J., for petitioning creditors William Boales, Loren Spero and Harold Zulch.

## OPINION

VINCENT J. COMMISA, Bankruptcy Judge.

This matter was commenced by the filing on April 20, 1981 of an involuntary petition under Chapter 7 of the Bankruptcy Code, by five creditors of the alleged debtor, Gill Enterprises, Inc. (hereinafter Gill). The petitioning creditors are: Armstrong Machine Works, Inc. (Armstrong), Armstrong-Hunt, Inc. (Armstrong-Hunt), Harold Zulch, Jr., William G. Boales and Loren A. Spero.

Armstrong is an account creditor who asserts a claim in excess of $415,724.60 and Armstrong-Hunt, also an account creditor, asserts a claim in the sum of $3,433.20. Zulch, Boales and Spero are former employees of Gill, who assert claims in the following amounts: not less than $7,500.00 for Boales, not less than $8,000.00 for Spero and not less than $8,000.00 for Zulch.

Gill has filed an answer denying that it is not paying its debts as such debts become due, and has set up three affirmative defenses asserting that the petition was not filed by three or more creditors holding claims against it. It further asserts that it has off-setting claims against Spero, Boales and Zulch, which exceed any claims they might have and, as to Armstrong and Armstrong-Hunt, their separate claims constitute one claim, as Armstrong-Hunt is merely a division of Armstrong and such combined claim should be treated as the claim of one creditor.

In effect, Gill contends that the involuntary petition against it was not filed by three or more entities holding claims against the debtor.

The following constitutes the Court's findings of fact.

For some time before March 9, 1981 Gill was engaged in business as a manufacturer's representative and represented, among others, Armstrong. The relationship was terminated as of March 9, 1981.

As of May 31, 1981 Armstrong had uncontroverted, non-contingent claims against Gill of $415,724.60. The status of the account was as follows:

| | |
|---|---|
| Unpaid claims for over 120 days | $378,019.53 |
| Unpaid claims for over 90 days | 9,150.38 |
| Unpaid claims for over 60 days | 624.00 |
| Unpaid claims for over 30 days | 8,590.68 |
| Current claims | 4,676.01 |

The terms of Armstrong's billings to Gill are net thirty days. The amount listed as current indicates that as of May 31, 1981, thirty days had not elapsed from the mailing of the invoice.

In addition to the above, Gill owes Armstrong an additional $15,912.00, resulting from goods delivered by Armstrong directly to a Gill customer. Payment was made to Gill, which never remitted the monies to Armstrong.

Armstrong-Hunt has an undisputed, noncontingent claim against the debtor in the amount of $3,433.20 for an order filled by Armstrong-Hunt and duly invoiced, but never paid for by Gill. This sum became due thirty days after the date of the invoice, which was January 13, 1981.

Armstrong-Hunt and Armstrong are separate corporate entities. Despite the contention of Gill that Armstrong-Hunt is a division of Armstrong, no evidence supporting this contention was offered by Gill. The only evidence before the Court is a certified copy of Armstrong-Hunt's articles of incorporation, filed with the Michigan Department of Commerce, which establishes its separate corporate existence from that of Armstrong.

The alleged debtor has admitted that it owes Spero sums of money in excess of any counterclaim that it may have against him.

As to the claims of Boales and Zulch, the alleged debtor in its answer, claimed sums against each in excess of the claims filed by each.

■ Since it admitted that it owed monies to both Boales and Zulch, but failed in the trial to introduce any evidence to support its allegations of the counterclaims or set-off, the claims of both Boales and Zulch will be allowed as separate claims.

As of May 18, 1981 the outstanding accounts payable of Gill, excluding the claims of Armstrong-Hunt and Armstrong, amounted to $81,691.78. Of this amount, $20,674.22 was current, $35,593.46 was unpaid thirty (30) days after invoice, $6,451.22 was unpaid sixty (60) days after invoice and $18,932.40 was unpaid ninety (90) days after invoice.

From December 31, 1980 to May 18, 1981 the assets of Gill had fallen from approximately $465,480.00 to approximately $164,644.21, and inventory had declined from $137,837.00 to $71,124.62. During the same time period, accounts receivables had declined from $270,643.00 to $43,518.59.

The December 31, 1980 balance sheet of Gill, prepared by its own accountants, showed an excess of liabilities over assets of $184,455.00. Its income statement for the year ending December 31, 1980 showed a net loss of $198,231.00.

11 U.S.C. § 303 provides the standard for determining whether the Court shall grant relief against the alleged debtor. It provides in pertinent part as follows:

§ 303. Involuntary cases.

.   .   .   .   .

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000.00 more than the value of any lien on property of the debtor securing such claims held by the holder of such claims;

.   .   .   .   .

(h) If the petition is not timely controverted the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due; or

(2) within 120 days before the date of filing of the petition, a custodian, other than a trustee, receiver or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purposes of enforcing a lien against such property, was appointed or took possession.

■ The Court has found that Armstrong and Armstrong-Hunt are separate corporate entities filing separate claims which are non-contingent and uncontroverted. It is also clear that the claim of Spero is in an amount greater than any counterclaim or set-off that the debtor might have proven. Thus, the requirements of the Code, that the involuntary petition must be filed by three or more entities each of which is the holder of a non-contingent claim as to liability, has been complied with. There is no question but that such aggregate claims total at least $5,000.00, so that requirement is also met.

As to the claims of Boales and Zulch, the Bankruptcy Code grants the holders of disputed claims the right to file an involuntary petition and be counted as petitioning creditors. The Bankruptcy Code excludes as petitioning creditors only those creditors whose claims are "contingent as to liability". See *In re All Media Properties, Inc.*, 5 B.R. 126, 132 (Bkrtcy.S.D.Texas, 1980).

■ There can be no question but that the claims of Boales and Zulch are not contingent claims. Together with Spero, they were former employees of the alleged debtor. The claims are based on services rendered as employees of the alleged debtor. The debtor had a legal duty to pay the claims as soon as the services were rendered, and there is no dispute that they were. The duty to pay the claim did not rest upon the occurrence of a future event which would have made them contingent liabilities. See *In re All Media Properties, Inc., supra* at p. 133.

In view of the above, it is the determination of this Court that the petitioning creditors have complied with the requirements of the Bankruptcy Code as to the number of petitioning creditors with non-contingent claims, and the statutory requirement of a $5,000.00 aggregate minimum.

As to the issue of whether or not "the debtor is generally not paying such debts as they become due", the Court has considered the contention of the alleged debtor that from January 1, 1981 to April 20, 1981 it reduced its total accounts payable from $685,000.00 to $480,000.00, which included a reduction in the Armstrong claim from $537,000.00 to $399,000.00 on the date the petition was filed. It had an overdraft in its account of $32,000.00, which has been eliminated and, at present, has a positive balance in its bank account of approximately $18,000.00.

Even if the reduction of the total outstanding debt in the amount of $205,000.00 is correct, this must be balanced against the obvious fact that during the same period of time, the assets of the corporation declined by approximately $300,000.00, thus the debt reduction was not effectuated out of earnings of a profitable business, but from liquidating approximately two-thirds of its assets, its inventory and accounts receivables.

In enacting the involuntary provisions of the Bankruptcy Code, Congress abandoned the approach of the old Bankruptcy Act, which provided for an act of bankruptcy and the "balance sheet insolvency test", but adopted the "equity insolvency test". See 2 *Collier on Bankruptcy* (15th ed. 1980), § 303.11, p. 303.27.

In considering whether or not the alleged debtor is "generally not paying such debtor's debts as such debts become due" the Court has noted the comments set forth in the Report of the Commission on the Bankruptcy Laws of the United States, part II at p. 75 (1973), which states that,

"the scope and meaning of 'generally unable' and 'generally failed' are left to the courts: it is not possible to lay down guidelines that will fit all cases. However, it is clear that the court must find more than prospective inability to pay only a few of the debtor's liabilities when they fall due and more than a past failure to pay only a few of his debts. It is intended that the court consider both number and amount in determining whether the inability or failure is general."

See also 2 *Collier on Bankruptcy* (15th ed. 1980), § 303.11, p. 303.28; *In re J. V. Knitting Services, Inc.*, 4 B.R. 597, 2 C.B.C.2d 223 (Bkrtcy.S.D.Fla.1980); *In re Duty Free Shops Corp.*, 6 B.R. 38 (Bkrtcy.S.D.Fla. 1980).

■ The purpose of § 303(b)(1) is to allow more flexibility on considering involuntary actions and not to restrict or limit the involuntary process. Mechanical, inflexible tests should not be applied, thus, in *In re Hill*, 5 B.R. 79 (Bkrtcy.1980), where a debtor was paying all of its debts except three very substantial ones, the Court ruled that the debtor was insolvent. *In the matter of Duty Free Shops Corp.*, 5 B.R. 539 (Bkrtcy. 1980), the Court ruled that unilateral partial payments on some overdue accounts could not defeat an involuntary petition.

■ Considering the timeliness of the payment of past due obligations, the amount of debts long overdue, the length of time period during which it has been unable to meet the large debts it owed, the reduction of its assets and the deficit financial situation as indicated by its own balance sheet as of December 31, 1980 which has not improved to date, this Court is satisfied that Gill, the debtor herein, is generally unable to and has generally failed to pay its debts as such debts become due and that it does not have the ability to repay its present obligations out of its business earnings.

■ The alleged debtor contends that the petitioning creditors have filed the involuntary petition in bad faith in an effort to drive the debtor out of business to prevent it from competing with its new manufacturers' representative.

In considering this contention, the Court noted that during the ninety day period immediately preceding the filing of the involuntary petition, the alleged debtor made preferential payments to various past due accounts other than the accounts of the petitioning creditors herein. Admissions were made that a member of the Gill family received $36,000.00 per year in salary for the past three years without rendering any services whatsoever in consideration of said salary. It is also noted that the present officers of the debtor have taken loans in excess of $70,000.00 from the debtor and have failed to repay same, despite the company's desperate financial condition.

The Court is satisfied that the above noted actions of the company were such that Armstrong and Armstrong-Hunt were forced to seek relief under the involuntary provision of the Bankruptcy Code. The Court finds this contention of bad faith without merit and, accordingly, denies Gill's application for costs and attorneys' fees.

Armstrong seeks the appointment of a trustee under Chapter 7 of the Code. Section 15701 provides for the prompt appointment of a trustee immediately after the order for relief is granted. The appointment of a trustee is automatic and mandatory but, since it is within the exclusive province of the United States Trustee, the Court directs the petitioners' attention to that office.

Submit an order in accordance with the above opinion which authorizes the issuance of an order for relief under Chapter 7 of the Bankruptcy Code.