In re **ARRIOLA ENERGY CORPORATION, Hardin Energy Corporation, Splendora Energy Corporation, Bammel Energy Corporation, a/k/a by others as Westwind Energy Corporation, Arriola 1984 Acquisition and Development Program, Splendora 1984 Acquisition and Development Program, a/k/a by others as Westwind 1984 Acquisition and Development Program, Hardin 1984 Acquisition and Development Program.**

Civ. A. No. H–86–4576.

United States District Court,
S.D. Texas,
Houston Division.

May 27, 1987.

William E. Kendall, Jr., Barsalou and Associates, P.C., Houston, Tex., for debtors.

James R. O'Donnell, Butler & Binion, Houston, Tex., for creditor.

## ORDER

CARL O. BUE, Jr., District Judge.

Pending before the Court is a consolidated appeal from an Order of Relief entered by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, on November 14, 1986. The order was entered against six debtors as a result of eight involuntary petitions filed by the petitioning creditor, Rockwood Insurance Company ("Rockwood") on January 15, 1986. In its petitions, Rockwood alleged that it had claims arising out of identical contracts with each debtor. Because the debtors shared common partners or shareholders and because the legal and factual issues were similar or identical, the eight actions were consolidated under one joint administration. The Bankruptcy Court conducted a hearing on Rockwood's motion for entry of an Order for Relief and subsequently granted the motion against six of the eight debtors, placing them in bankruptcy. The Debtors in this appeal include Arriola Energy Corporation, Hardin Energy Corporation and Splendora Energy Corporation, as well as their respective general partners, Arriola 1984 Acquisition and Development Program, Hardin 1984 Acquisition and Development Program and Splendora 1984 Acquisition and Development Program ("Debtors").[1]

1. The Bankruptcy Court ordered Westwind En-   ergy Corporation, a/k/a Bammel Energy Cor-

## I. *Background*

The limited partnerships were formed to own and operate oil and gas properties. Each of the corporate general partners is 100% owned by Jeffrey E. Carter, who is also the president of each general partner. Pursuant to the original plan of capitalization, each partnership was designed to begin with an aggregate capital of between 1.4 and 4 million dollars. Each partnership, acting through its general partner, executed an individual promissory note, constituting 80% of its subscription price. The remaining 20% was to be paid in cash. In order to obtain operating capital, the partnerships pledged these notes to a lending institution, Vereins Und Westbank ("Vereins"),[2] as collateral for a loan. As part of the financing scheme, Rockwood issued investor bonds to Vereins to secure payment of each promissory note.

Thereafter, due to setbacks in the oil industry, the partnerships defaulted in payments of the notes. Insofar as Vereins' sole recourse was limited to the pledged limited partner notes, the bank then demanded payment of the promissory notes from the investors. When the investors failed to make the payments, Rockwood was called upon to make the payments under the terms of the bond. Rockwood has paid approximately $3,000,000 to the Vereins Bank arising from obligations on the Arriola, Hardin, and Splendora partnerships.[3] Debtors contend that this money was only a loan to be returned to Rockwood and that Rockwood has failed to pursue collection actions against the investors who executed the bonded notes.

Debtors bring this appeal on the following grounds:

1. Whether Debtors had more than twelve creditors and thus necessary for Rockwood to join at least two other creditors;

2. Whether Rockwood is the holder of claims which are the subject of a bona fide dispute; and

3. Whether Debtors were generally paying their debts as they became due;

Under each of these grounds for relief, Debtors contend that:

A. There was insufficient evidence to support an entry of an order for relief; and

B. Debtors were denied their constitutional rights to due process under the law.

## II. *Standard of Review*

It is well established that findings of fact by a bankruptcy court are to be reviewed under a strict standard. Findings of fact shall not be set aside by a reviewing court unless they are clearly erroneous. Bankr. Rule 8013, FED.R.CIV.P. 52(a). A finding is clearly erroneous only if, after review of all of the evidence, the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *In re Centuria International, Inc.*, 26 B.R. 197 (Bankr. 1st Cir.1982).

Mixed questions of law and fact are not subject to the "clearly erroneous" standard; the Court may make its own application of law as it understands it. Bankr. Rule 8013; FED.R.CIV.P. 52, *Taylor v. Moram Agencies*, 739 F.2d 1384 (9th Cir. 1984).

█ Conclusions of law, such as the meaning of a clause or interpretation of a contract, are freely reviewable by the appellate court. FED.R.CIV.P. 52; *Continental Oil Co. v. Cole*, 634 F.2d 188, 191 (5th Cir.1981); *In re Swanson*, 36 B.R. 99

---

poration, and its general partner, Westwind 1984 Acquisition and Development Program, a/k/a Bammel 1984 Acquisition and Development Program, to submit a statement of its position as to whether the legal fees in excess of $5000 incurred by Rockwood on Westwind's behalf constitute a debt to make Rockwood eligible as a petitioning creditor under 11 U.S.C. § 303(b)(1). Counsel for Westwind filed the requested brief. As of this date, the bankruptcy court has not made a final decision regarding the Westwind partnership. Thus, Westwind is not a "Debtor" for purposes of this appeal.

**2.** Westwind pledged its note to Crossland Savings.

**3.** Rockwood has not paid any principal on the bonds regarding the Westwind partnership.

(Bankr. 9th Cir.1984). Allegations of the denial of due process rights are also questions of law.

### III. *Number of Creditors*

A. Whether there was insufficient evidence to support an entry of an Order for Relief.

■ Section 303(b) of the Bankruptcy Code specifies who may file an involuntary petition. Under current law, if the debtor has twelve or more creditors, three creditors must join in the involuntary petition. If there are less than twelve creditors, a single creditor who is owed at least $5,000 may file the petition. Bankr.Code § 303(b)(1). Furthermore, any employee or insider of the debtor and any transferee of a voidable transfer is excluded from the creditor classification. Bankr.Code § 303(b)(2).

At the bankruptcy hearing, Debtors sought to rebut Rockwood's standing to bring the action by alleging that twelve or more creditors existed at the time of filing the petition and that, as a matter of law, Rockwood needed to join at least two other creditors to be entitled to an Order for Relief. In support of its allegation, Debtors submitted invoices showing debts owed to other persons. Many of these invoices were addressed to J.E. Carter Energy & Development Co., the management company of the general partners and also wholly owned by the sole shareholder of the corporate general partners, Mr. J.E. Carter. The trial court made a factual determination that the documents demonstrated the creation of various paper entities and that, in the minds of the creditors, the services rendered were to be paid by the management company. Although funds may then be repaid to J.E. Carter Energy & Development Co. by the partnerships, the management company was an insider and not a creditor for purposes of section 303. In counting the number of creditors, insiders such as the management company are excluded. 11 U.S.C. § 303(b)(2). According to the record only two other creditors, a CPA and a law firm, were listed on the Debtors' invoices. Because there were less than twelve creditors, Rockwood had standing as a sole petitioning creditor to file its involuntary petition, provided that it was owed at least $5000. This Court is of the opinion that the trial court's determination that there was sufficient evidence to support a conclusion of less than twelve creditors was correct.

B. Whether Debtors were deprived of their Constitutional rights to due process under the law.

■ Debtors contend that the trial court should have, but did not, consider the issue of the number of creditors. They cite the court's refusal to allow them to present evidence regarding the customary management of invoices by the management company as being a violation of due process. However, upon review of the invoices, the trial court questioned Debtors' counsel concerning the relationship between Debtors and J.E. Carter Energy & Development Corporation. After the court determined that J.E. Carter Energy & Development Corp. was not a creditor, counsel did not object, but rather stated that they had no further evidence on this issue. Furthermore, earlier in the proceeding, Debtors' counsel also stated that J.E. Carter Energy & Development Corporation was an insider. This Court is of the opinion that Debtors have not been denied any constitutional rights to due process.

### IV. *Bona Fide Dispute—Debt Due and Owing*

A. Whether there was insufficient evidence to support an entry of an Order for Relief.

Rockwood introduced into evidence four General Partner Indemnification Agreements, also entitled "Limited Partnership Guarantee Bond[s]." Both parties stipulated that each of these agreements were signed by Mr. Carter.

■ Debtors argue that the contracts are indemnification agreements, not guaranty agreements. They contend that this distinction poses a significant consequence regarding Rockwood's right to recover mo-

nies paid. Specifically, Debtors contend that an indemnitor, by his contract, agrees to hold one harmless from the legal consequences of the conduct of another, whereas a guarantor undertakes to pay if the principal does not. The Court agrees that this theoretical concept is correct. Recovery can be had from an indemnitor against loss to the obligee only when such loss has actually occurred, but a guarantor becomes liable as soon as the debt of the principal matures and is unpaid. The failure to pay is a breach of the guaranty agreement. 50 Am.Jur. *Suretyship* § 8 (1948).

■ Debtors contend that Rockwood is an indemnitor, not a guarantor, and, therefore, is liable only for a loss actually incurred, not merely for a debt that is due, but which will be repaid. They claim that Rockwood did not sustain a permanent loss as required under the indemnification agreements. Rockwood, on the other hand, argues that the distinction between indemnification and guaranty is insignificant. Whether the debt arose when Rockwood paid the $3,000,000 to the bank or whether it arises only when a permanent loss is incurred is irrelevant. Moreover, Rockwood claims that an actual loss was incurred. Through the testimony of Mr. Philip Kift, Secretary and House Counsel of Rockwood Insurance Company, Rockwood established that they had indeed paid approximately $3,000,000 to Vereins' Bank on behalf of the Arriola, Splendora, and Hardin limited partnerships and their corporate general partners. This money, they claim, constitutes a debt owed by the Debtors to Rockwood, whether it be an indemnification or a payment under a guaranty agreement. As proof of the debt, Rockwood offered into evidence checks made payable to Johnston Bank & Trust Company for wire transfer to Vereins Bank.

During the trial, Debtors contended that these payments were recoverable loans and that Rockwood incurred only a temporary debt, not a permanent loss. Because the receipt for the payments was entitled "Loan Receipt," they speculated that there may be another agreement whereby the bank would return these funds to Rock-

wood. However, Debtors never produced any evidence to support their speculation. The fact remains that Rockwood paid over $3,000,000 on behalf of the partnerships. The trial court concluded that Rockwood would not be compensated for the funds transferred to Vereins Bank on behalf of the partnerships, at least to the extent that the funds did not exceed the amount bonded by Rockwood. The court further determined that these outstanding payments constituted a debt which was still due and owing. Although Debtors contested the question of whether the monies paid by Rockwood were temporary loans or permanent payments, they failed to rebut the contention that these payments were only recoverable if they exceeded the amount of the investor bonds. Debtors introduced no evidence showing that the money would indeed be repaid by the bank, thereby constituting a loan. Furthermore, the trial court had the opportunity to observe Mr. Kift on the witness stand and found him to be a credible witness. Wide latitude and discretion rests in the trial court and that discretion should only be disturbed in the case of clear abuse. In view of the testimony and the evidence adduced at trial, this Court affirms the trial court's holding that no bona fide dispute existed and that a debt was due and owing by the Debtors to Rockwood.

B. Whether Debtors were deprived of their constitutional right to due process under the law.

■ After the trial court admitted the indemnification agreements into evidence, Debtors failed to object. Debtors now contend that the court denied them due process of law by not allowing them time to object. However, the record indicates that the court paused after admitting the documents, during which time Debtors could have objected. In addition, after a ten-minute recess, Debtors made no objection to the admission of the evidence. Failure to do so is fatal to their claim. Debtors further contend that they were not allowed to present evidence on the issue of a bona fide dispute. However, after the trial court reviewed the aforementioned checks, counsel

for the Debtors was asked whether the admission of the checks was satisfactory or whether he preferred to direct questions to a witness. Counsel stated that he preferred the latter, and did indeed elicit testimony from Mr. Kift on the issue of a disputed debt. At no time did counsel ask to present any evidence in rebuttal to Mr. Kift's testimony. After Mr. Kift's testimony concluded, counsel raised the next issue, *i.e.*, the issue of not generally paying debts as they become due. Therefore, this Court is of the opinion that Debtors were not deprived of their right to due process.

## V. *Generally Not Paying Debts As They Become Due*

A. Whether there was insufficient evidence to support an entry for an Order of Relief.

Pursuant to Section 303(h)(1) of the Bankruptcy Code, a court shall order relief against a debtor in an involuntary case only if the debtor is generally not paying his debts as they become due. The burden of establishing that a debtor is generally not paying rests upon the petitioning creditor. No definitive meaning of this subsection is provided in the Code; thus, the task of developing the appropriate factors for consideration has fallen to the courts. 2 Collier on Bankruptcy § 303.12[4] (15th ed. 1985). The cases which have considered this issue have rejected the contention that the generally-not-paying standard is a matter of simple mathematics requiring courts to establish a ratio of paid debts to unpaid liabilities. Instead, courts have found a Congressional intent to grant more flexibility and to make it easier to commence involuntary proceedings against debtors. *See In re CLE Corp.*, 59 B.R. 579, 585 (Bankr.N.D.Ga.1986) and cases cited therein.

■ The cases disclose a number of factors which may indicate that a debtor is generally not paying its debts as they become due. Among them are the number and amount of the unpaid debts in relation to the size of the debtor's operation, *In re All Media Properties, Inc.*, 5 B.R. 126, 142 n. 5 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d

193 (5th Cir.1981); the age and number of unpaid debts, *In re Win-Sum Sports, Inc.*, 14 B.R. 389 (Bankr.D.Conn.1981), *In re Bowers*, 16 B.R. 298 (Bankr.D.Conn.1981); the total amount of indebtedness, *In re Gill Enterprises, Inc.*, 15 B.R. 328 (Bankr. D.N.J.1981); and the number of unpaid creditors, *In re R.V. Seating, Inc.*, 8 B.R. 663 (Bankr.S.D.Fla.1981). No one factor is necessarily determinative of whether, in fact, the Debtor is generally not paying debts as they become due. However, the Court views *All Media* as being most closely related to the issue at bar. In that case, the Court held that generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper. *In re All Media*, 5 B.R. at 143.

■ In the case *sub judice*, the only evidence presented was the existence of cancelled checks showing payments of approximately $3,000,000. As indicated, the amount alone is not conclusive. It must be compared to the debtors' other outstanding debts, if any; and the nature and conduct of the debtor's financial affairs must be examined. This Court agrees with the trial court's determination that the $3,000,000 debt is significant and is owed to Rockwell. However, the Debtors must be given an opportunity to present evidence on this issue as part of their defense. If, after the Debtors' presentation, it appears that the debt is so substantial as compared with any other outstanding debts, then it alone would constitute sufficient evidence to establish the generally-not-paying standard.

B. Whether Debtors were denied the right to due process under the law.

■ The Constitution provides all parties fair rights of procedural due process and an opportunity to be heard in a fair trial. U.S. Const. Amendments V and XIV. The right to present a full defense on the issues is part of a litigant's rights of proce-

dural due process. *Western Electric Co., Inc. v. Stern,* 544 F.2d 1196, 1199 (3rd Cir.1976).

In this case, Debtors' counsel specifically requested from the trial court the opportunity to present evidence on the generally-not-paying issue. Counsel was explicitly denied that opportunity. The Court is of the opinion that Debtors were denied procedural due process by the trial judge's refusal of their request to present evidence at the close of the hearing.

Accordingly, this case is remanded to the bankruptcy court to establish whether Debtors were generally not paying their debts as they become due.

### VI. *Conclusion*

The Court concludes that Rockwood is entitled to bring the involuntary petition as a sole creditor because less than twelve creditors exist and because a debt greater than $5000 is due and owing. However, the case is remanded to the bankruptcy court for further consideration of the generally-not-paying requirement.