[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The following facts have been stipulated to by the parties. (Court's Exhibit #1). These facts are as follows:
 1. On May 29, 1992, the plaintiff obtained a judgment against the defendant Barberino, Inc. in the Superior Court for the Judicial District of New Haven for the sum of $11,322.97 plus $417.20 costs for a total of $11,740.17 and an additional $42.80 costs incurred after judgment.
 2. The defendant Barberino, Inc. had Tom Barberino as it's present [president] and Paul E. Barberino was treasurer.
 3. The defendants Alan P. Barberino, David P. Barberino and Donald Barberino are brothers of Tom A. Barberino and are insiders as defined by 52-552.
 4. The defendant Barberino, Inc. paid to each of the defendants Alan P. Barberino, David P. Barberino and Donald Barberino (referred to in the memorandum also as the Brothers, Barberino) the following sums on antecedent debts owed to them the following sums:
 August 31, 1992 $890.39 November 9, 1992 $445.19
CT Page 8216-A
 5. The antecedent debt was a note, an assignment and a schedule of payments which are attached hereto. (Attached to Court's Exhibit #1).
 6. Barberino, Inc. also transferred to the defendant Barberino Brothers, Inc. $4,573.83 on September 21, 1992.
 It is undisputed that in addition to the debt owed to the plaintiff, the defendant Barberino, Inc. owed unpaid taxes to the IRS in the sum of $19,365.39. This debt was evidenced by an IRS tax lien. (Plaintiff's Exhibit #3). This tax lien was paid by a certified check from Tom Barberino, Sr. dated October 5, 1992 in the amount of $20,250.17. (Defendant's Exhibit #2). Tom Barberino testified that the defendant Barberino, Inc. "closed it's doors on October 4, 1991." Testimony from each of the defendant brothers Barberino indicated that each was aware that Barberino, Inc. had gone out of business on October 4, 1991. Tom Barberino alluded to the fact that Barberino, Inc. went out of business because one of it's employees had embezzled a large sum of money.
Other facts claimed to have been proven by the defendants are as follows:
"STATEMENT OF FACTS:
 The evidence at trial established the following facts:
 On January 3, 1991, Barberino, Inc. signed a promissory note in favor of the Estate of Peter F. Barberino, Jr. for $42,000.00 payable in monthly installments of $1,335.59 (Court's Exhibit 1). On the same day the rights to said note were assigned to David, Donald and Alan Barberino a CT Page 8216-B one third interest each (Court's Exhibit 1). On said date Barberino Bros., Inc. signed an Unconditional Guarantee Agreement on said note as additional security to the three brothers (Defendant's Exhibit 3).
 From February, 1991 to September, 1991 Barberino, Inc. paid the monthly payments on said note in a timely fashion. No further payments were made until August 31, 1993 and November 9, 1992 (Court's Exhibit 1).
 On May 29, 1992 Herald Publishing Company obtained a judgment by default against Barberino, Inc. in the amount of $11,740.17 (Court's Exhibit 1). On June 22, 1992 the Internal Revenue Service notified Barberino, Inc. that it is delinquent to the extent of $18,733.19 (Plaintiff's Exhibit 1). On September 10, 1992 the Internal Revenue Service recorded a Notice of Federal Tax Lien on the Wallingford Land Records against Barberino, Inc. at 505 North Colony Road, Wallingford, Connecticut (Plaintiff's Exhibit 2).
 On September 21, 1992 Barberino, Inc. issues a check payable to Barberino Bros., Inc. in the amount of $4,573.83. Tom A. Barberino, President of Barberino, Bros., Inc. uses these funds as well as in excess of $15,000.00 of his owner personal funds to pay to the IRS lien off to avoid negative publicity to the Barberino name (Defendant's Exhibit 2). On October 6, 1992 the IRS issues a release of lien to Tom A. Barberino which is filed on the Wallingford Land Records on October 8, 1992 (Defendant's Exhibit 1).
 Tom A. Barberino was President of Barberino, Inc. of Southington and Barberino Bros., Inc. of Wallingford. Alan, David and Donald Barberino were never employed by or officers of Barberino, Inc. or Barberino Bros., Inc. They were not privy to the financial CT Page 8216-C affairs of Barberino, Inc. Their brother Tom A. Barberino did not discuss the financial affairs of any of the family business with his brothers.
 Subsequent to its closing in October of 1991, Barberino, Inc. has continued to collect receivables and pay some bills."
The plaintiff brings this action on Conn. Gen. Stat.52-552a, the Uniform Fraudulent Transfer Act. This act was adopted on October 1, 1991 as Public Act 91-297. It repealed the former basic statute on fraudulent conveyances, Conn. Gen. Stat. 52-552. This Uniform Fraudulent Transfer Act is similar to 548 of the Bankruptcy Code. Therefore, cases interpreting 548 of the Bankruptcy Code are helpful in interpreting52-552a. The number of these cases, hereinafter cited, are, with one exception, all cases decided by bankruptcy courts or federal courts on appeal from bankruptcy courts.
The plaintiff's claim against all the defendants is based on 52-552f.
The claim against the brothers Barberino is based on52-552f(b) which provides that:
 "A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."
The claim against Barberino Brothers, Inc. is based on52-552f(a) which provides that:
 "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer obligation and the debtor was insolvent at that time or the debtor became insolvent as a CT Page 8216-D result of the transfer or obligation."
In order for the plaintiff to succeed in it's claim against the brothers Barberino it is necessary for the plaintiff to prove that the defendant Barberino, Inc. was insolvent at the time of the transfers and that the insider (brothers Barberino) had reasonable cause to believe that the defendant Barberino, Inc. was insolvent.
The defendant Barberino, Inc. was insolvent.
The insolvency aspect of this claim is set out in Conn. Gen. Stat. 52-552c. Subsection (a) states that a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation. However, subsection (b) states that a debtor is presumed to be insolvent if he is generally not paying his debts as they become due.
The plaintiff admits, however, it did not have enough information to satisfy the balance sheet definition of insolvency. Facts, however, were proven and are persuasive, which show that at the time of the transfer the debtor, Barberino, Inc., was generally not paying its debts as they became due.
These facts are (1) the defendant Barberino, Inc. has an unsatisfied judgment due the plaintiff in the sum of $11,740.17; (2) the defendant Barberino, Inc. also had money due on a note to the Estate of Peter Barberino which was in default and substantially unpaid; (3) the defendant Barberino, Inc. had unpaid 941 taxes due the IRS; (4) the defendant Barberino, Inc. had been out of business since October 4, 1991; and (5) Tom Barberino advanced the funds needed to pay the IRS lien.
These facts taken together would show that the defendant Barberino, Inc. was generally not paying its debts as they matured. If the defendant Barberino, Inc. was able to pay its debts as they matured, then the debt owed the IRS was one which would have been paid first since it was for 941 taxes which are withholding taxes. The defendant Barberino, Inc. did not have sufficient funds to pay sums which should have been withheld from wages since funds had to be advanced by Tom Barberino personally to pay the lien. If the defendant Barberino, Inc. could not pay withholding taxes, a fair inference may be drawn that Barberino, Inc.'s other debts could not be paid. This analysis is supported by the fact that the plaintiff's debt was not being CT Page 8216-E paid as well as the note due to the defendant, Brothers, Barberino.
There are several factors that are considered in determining whether a debtor is generally paying his debts as they become due. These include the number and amount of unpaid debts in relation to the size of the debtor's operation, the age and number of unpaid debts, the total amount of debt and the number of unpaid creditors. In re Arriola Energy Corp., 74 B.R. 784,790 S.D. Tex. 1987). Other factors to consider are the amounts of the delinquency, and the liquidity as opposed to the amount of the delinquency and the nature and conduct of the debtor's affairs. In re CLE Corp, 59 B.R. 579, 587 (N.D. Ga. 1986).
In In re Frank and Anne Taylor, 75 B.R. 682, 683
(N.D. Ill. 1987) the debtors were found to be generally not paying their debts as they became due where they failed to pay a debt due for a boiler, were not paying gas bills or servicing a mortgage on an apartment building.
In Matter of BD Intern Discount Corp., 15 B.R. 755,764 (S.D. N.Y. 1981) a debtor was held to not be paying debts generally as they become due where he voluntarily ceased doing business and the remaining tangible assets were held under unknown conditions in an attorney's escrow account, it's business was being operated by a new entity who purpose was allegedly to function without the bother of debtor's obligations and a transfer of substantial sums of money had already been made to a parent corporation either outright or in the guise of a loan.
It is clearly evident from these cited cases that there is not one factor alone to be considered in determining whether a debtor is generally not paying it's debts as they become due. It is important to note in this case that the defendant Barberino Inc.'s business was closed on October 4, 1991, it had closed its doors, which was eight months prior to the first payment made to the defendant Brothers Barberino. Also Withholding Taxes totaling $19,368.89 had not been paid and the debtor did not have, obviously, the means to pay these taxes from it's own assets. Tom Barberino, Sr. had to advance his own funds in order that these taxes were paid and, of course, it was his own interest to see that these taxes were paid since, being the principal officer of Barberino, Inc., he was personally liable for the payment of these taxes.
The defendant Brothers Barberino had reasonable cause CT Page 8216-F to believe that the debtor was insolvent.
This second requirement of Conn. Gen. Stat.52-552f(b) is that the insider have reasonable cause to believe that the debtor was insolvent. Reasonable cause to believe is not actual knowledge of the insolvency, but, as the court said in Levy v. Carter, Rice Co., 136 Conn. 216, 219 (1949).
 In determining whether a creditor has reasonable cause to believe that a debtor is insolvent the former is bound not only by what he knows but also by such facts as reasonable inquiry would disclose if the known facts were such to induce an ordinarily prudent business to inquire further into the debtor's financial situation.
Therefore, it is not the actual knowledge of the insolvency that is important but the knowledge of facts which would cause one to investigate and which investigation would lead to a discovery of insolvency. In In re Matter of Davenport,64 B.R. 411, 413 (M.D. Fla. 1986) a mortgage bank was held to have reasonable cause to believe the debtor was insolvent at the time certain mortgages were executed, where the bank requested the mortgages as additional security for it's loan because of a drastic loss in the value of stock securing the loan to the debtor.
In In re Tennessee Wheel and Rubber Company, 62 B.R. 1002,1006 (M.D. Tenn. 1986) a corporation officer was held to have reasonable cause to believe that the debtor was insolvent where at the time he received payments on a loan, he knew that the debtor had no cash to meet his payroll and other expenses of operation.
In In re National Merritt Inc., 11 B.R. 102, 104, 105
(S.D. N.Y. 1981) the debtor was delinquent on paying its loan from it's inception. The defendant knew that the debtor was operating with a very tight cash flow and obtained personal guarantees from the debtor's partners. This was held to be sufficient knowledge.
In Matter of PRS Products, Inc., 547 F.2d 414, 417, 418 (1978), a bank was held to have reasonable cause to believe the debtor was insolvent where the debtor exceeded its CT Page 8216-G $25,000.00 approved credit line on numerous occasions, there was a substantial decline in cash flow through the debtor's account and the bank had difficulty in getting financial statements from the debtor.
In Miller v. Wells Fargo Bank International Corp.,540 F.2d 548, 556 (1976) a creditor bank was held to have reasonable cause to believe the debtor was insolvent where although it had a financial statement in it's possession reflecting that the debtor had a net worth of only $105,000.00 the bank knew that two of the debtor's vice-presidents were claiming title to some $3,000,000.00 worth of debtor's assets and though a financial settlement had been proposed no such settlement had in fact been executed.
In the present case, each of the defendant Brothers Barberino knew that the debtor had closed it's doors and further were aware of the fact that the notes which Barberino, Inc. was indebted on were in default. Knowledge of these facts was sufficient to prove that the defendant brothers Barberino had reasonable cause to believe that the defendant Barberino, Inc. was insolvent.
The basis of the plaintiff's claim against the defendant Barberino Brothers, Inc. is 52-552f(a). In order for the plaintiff to succeed under this section of the Uniform Fraudulent Transfer Act the plaintiff must establish the insolvency of the defendant Barberino, Inc. and that said defendant did not receive a reasonably equivalent value in exchange for the transfer.
The evidence or rather the lack of evidence clearly shows that the defendant Barberino, Inc. received nothing in return for the payment of $4,573.83 to Barberino Brothers, Inc. on September 21, 1992. There was no evidence submitted of anything received by Barberino, Inc. for the transfer. Tom Barberino testified that the sum was transferred to some unidentified bank account controlled by him. No business records were offered to show the reason for the transfer or that any consideration was given in exchange for the payment. Under these circumstances, the plaintiff's claim would be proven under52-552f (a).
This action was prompted by a discovery that in August, September, and November, 1992 the defendant Barberino, Inc. transferred sums totaling $8,580.57 to family members and CT Page 8216-H another family corporation. The courts have always looked askance at such transfers. Fraudulent and preferential transfers are prohibited by 548 of the bankruptcy code. When Connecticut adopted the Uniform Fraudulent Transfer Act on October 1, 1991 it was obviously intended to aid creditors in non-bankruptcy situations to obtain redress from debtors who have transferred or concealed assets.
In this case, a corporation who had been out of business for ten months transferred assets to insiders, brothers of the president of the defendant Barberino, Inc., and to another family corporation. The court should not allow the defendant Barberino, Inc. to succeed in this effort to evade payments of just debts. There can, of course, be no argument that the unsatisfied judgment of the plaintiff is a just debt that should be paid. The cited sections of the Uniform Fraudulent Transfer Act, Conn. Gen. Stat. 52-552a provide the tools by which this court can make the plaintiff whole. The plaintiff has proven the essential elements of Conn. Gen. Stat. 52-552a, et. seq. which would allow the court to enter a judgment as requested against each of the defendants. These remedies are set forth in52-552h.
Judgment may enter for the plaintiff against each of the Brothers Barberino (i.e., Alan P. Barberino — $1,335.58; David P. Barberino — $1,335.58; and Donald Barberino — $1,335.58) and interest and costs and against the defendant Barberino Brothers, Inc. for the sum of $4,573.83 and interest, and costs.
LEONARD W. DORSEY STATE TRIAL REFEREE